TENNEY, C. J., and RICE and GOODENOW, J. J., concurred.

---

## EDWARD L. RICE *versus* JOHN H. McLARREN.

A vessel like any other chattel may, *as between the parties*, pass by delivery. The property will vest in the purchaser without a bill of sale, and an action can be maintained for the purchase money in case she is lost before paid for.

A. offered to sell his interest in a vessel to B. for a given price. B. accepted the proposition, took possession of the vessel, loaded and sent her on a voyage. Two days out she was lost. B. had received no bill of sale of her, and the terms of payment had not been definitely agreed upon. A. brought his action to recover the agreed price. *Held*, that the plaintiff was entitled to judgment for that sum.

Property, agreed to be paid for on delivery, having been delivered without requiring payment, the right to payment at the time of delivery must be taken to be waived, and the time of payment left to be arranged by the parties.

Where goods have been purchased and delivered, under an agreement to pay for them by a note with surety, payable at a future time, if the note be not seasonably furnished, the seller may have an action of assumpsit immediately for the money.

As to what facts constitute a delivery of chattels.

The difficulty of ascertaining the construction of a contract is no reason for making it nugatory. Such a consequence is to be avoided if possible.

A principal having given directions to his agent to perform an act in his behalf, and the agent having performed the act before receiving the directions, it was *held*, that the action of the agent was ratified by the receipt of the instructions.

ON REPORT from *Nisi Prius*.

This was an action of ASSUMPSIT to recover the price of five-eighth parts of the brig Typee, alleged to have been sold by the plaintiff to the defendant. The writ was dated December 11th, 1854. At the trial the plaintiff, under general leave to amend, filed a new count, stating it to embrace the same claim already set forth in the writ, but the question

raised in regard to it did not become material in the disposition of the case.   The plaintiff introduced the correspondence between defendant and himself and much other evidence to show the sale of the part of the brig to defendant.   On Oct. 21st, 1853, the defendant wrote to the plaintiff, using the following language in the letter:  "Understanding you wished to sell the brig Typee, and as she is coming here, I will now like to have you give me your price and terms.   I should like to purchase her if you will sell for a fair value."   On the 24th of the same month the plaintiff replied that he would take at the rate of $7500, for his five-eighths.   On the 4th of November the defendant wrote:  "Your favor is received in reference to the Typee; your price is too high; if you will take at the rate of seven thousand dollars, I think I would close for her, and it is all she is worth."

In his letter of Nov. 10th to the plaintiff the defendant said:  "Your dispatch is at hand.   I will take the Typee at your offer; say at the rate of seven thousand dollars.   I expect you will give me a good long time for a part at least, as it may be convenient, and you said you would make the terms accommodating."

In a letter of November 26th, 1853, defendant said:  "Mr. Wheeler informs us that your terms of payment were one-fourth down, balance in three, six and nine months, with interest.   From your proposal to make the terms accommodating, we were expecting something more favorable.   From the extreme pressure in the money market we feel inclined to ask all the indulgence you can reasonably grant.   We propose to pay one-third cash, one-third in six months, and one-third in twelve months, interest after six months, which we trust will be satisfactory."

James P. Wheeler, who was acting as ship's husband of the vessel at the time of the alleged sale, and who was agent of the plaintiff in the transaction, testified that defendant came into his office, and stated to him that he had a dispatch from the plaintiff, accepting of his, defendant's, offer for the Typee; that he inquired about repairs, what sails she would want,

&c., and what offers had been made for freight. The witness informed him where the vessel lay, explained to him about the insurance and other matters, and "told him the vessel was to be at his, (defendant's,) expense and risk, from that date." On cross-examination, Wheeler testified, that "Mc-Larren went on board the vessel and loaded her, and I had nothing to do with her after the 10th or 11th of November."

The vessel sailed on the 26th of November, and was wrecked the 28th of the same month, near Cape May. No bill of sale of the brig was ever executed to the defendant, nor were the terms of payment agreed upon. Much testimony was introduced on both sides showing a disagreement between plaintiff and defendant in regard to terms of payment, and tending to show that the plaintiff's agent, Wheeler, did not regard the sale complete; but the testimony herein stated, with the facts which appear in the opinion of the Court, will be sufficient to an understanding of the case. From the evidence produced by the parties, the Court were authorized to draw such inferences of fact as a jury might, and to render such judgment thereon as the law applicable to the facts should require.

*Bradbury*, for plaintiff.

1. No delivery of a bill of sale was necessary. A parol sale is good to pass title as between vendor and vendee. Neither a change of registry, nor a bill of sale is necessary. 7 Johns. 308; 36 Maine, 89 and 91; 28 Maine, 463; 8 Pick. 86; 16 Pick. 401.

A bill of sale is only one evidence of delivery. In this case, actual delivery was shown. 8 Pick. 443; 3 Pick. 38; 6 B. & C. 360; 2 B. & A. 753.

2. No act remained to be done in this case *to the property.* Even if something was to be done, if it appears to have been the intention of the parties that the property should pass, it was a valid sale. 20 Pick. 280; 3 B. & A. 321; 5 B. & A. 557; 39 Maine, 98.

3. A sale may be made, and the question of payment left open, and even where cash is to be paid, or sureties furnished,

and a delivery made, or allowed to be taken, without payment or sureties offered, the title passes. 3 Sanford Sup. Ct. 203; 13 Penn. State R. 146; 10 Maine, 252.

*Hayden*, for defendant.

1. After the vessel was lost, there could be no sale. Story on Sales, 161; 2 Kent's Com. 468; *Curtis* v. *Hanney*, 3 Esp. 82; *Allen* v. *Hammond*, 11 Pet. 63.

2. The sale was not completed, because no bill of sale, or written paper by which plaintiff was bound, at all events, to furnish a bill of sale, was given. *Weston* v. *Penniman*, 1 Mason, 317; *The Sisters*, 5 Rob. 138.

By the old law, and the admiralty law now, a bill of sale is requisite. The recent provisions of the United States laws in regard to recording bills of sale of vessels, furnish a good reason for returning to the law as it formerly stood. Stat. July 29, 1850.

3. But if the law of *Bixby & al.* v. *Franklin Ins. Co.*, 8 Pick. 86, is good law here, we think much more than was done in the case at bar is required to pass a title, without a bill of sale. In this case the *terms* of the contract as treated by all parties were unsettled.

In order that a chattel shall pass by delivery, without the memorandum required by the statute of frauds, it is absolutely necessary that the delivery should be absolute, unconditional, and without any right, under any circumstances, in the vendor to reclaim the property. Story on Sales, 249; 10 Bing. 384; 3 Barn. & Ald. 380.

The parties here had not agreed upon all the terms, and done all things, which they intended should be agreed and done before the title should pass. 2 Parsons on Contracts, 321, and note; 2 Parsons on Contracts, 324.

May, J. — This action is brought to recover the price of five-eighths of the brig Typee, which the plaintiff claims to have sold and delivered to the defendant, on the 10th of November, 1853. The brig was wrecked on Barnegat Shoal on the 28th of the same month, and became a total loss; and the

question arises, whether the contract of sale had become so perfected prior to her loss as to enable the plaintiff to recover. The correspondence of the parties in the negotiation for the sale, shows that the plaintiff accompanying his offer, proposed that the terms of sale should be accommodating, and the defendant in his letter of Nov. 10th, accepting that offer, writes to the plaintiff, "I expect you will give me a good long time for a part at least, as it may be convenient;" and proposes to give as security the best names in Eastport, if desired. Their subsequent letters contain propositions from each, as to the terms of payment, but no proposition of either party seems to have been accepted, until Dec. 2d, after the loss of the brig, when the plaintiff telegraphed to James P. Wheeler, his agent at Eastport, that "Capt. McLarren is owner of the Typee at terms named," and that "she is ashore at Tuckertown." Whereupon Mr. Wheeler, on the same day, informs the defendant by letter that he can settle for the vessel on the terms proposed by him, and that he is ready to make such settlement, and transfer the policies and give the bill of sale.

It is urged, in defence, that the evidence shows that the contract of sale did not become complete, because the terms of payment had not been adjusted and a bill of sale given before the loss, and that, therefore, the property which was the subject of the contract, did not pass. It is undoubtedly true, that, if it appears from the contract that it was the understanding and intention of the parties when it was made, that some other act was to be done to complete the sale, then the property, if both parties had insisted on their rights, would not have passed until such act was done. If security was to be given or money to be paid by the defendant, before a delivery of the vessel, then the plaintiff was not obliged to part with his property until this was done. On the other hand, if the defendant was to have a formal delivery of the vessel, or a bill of sale, or if the parties were to agree upon the precise terms of payment before the sale was to be complete, then, by the terms of the contract, the plaintiff could not re-

cover the price until the required acts were performed. *Higgins* v. *Chesman*, 9 Pick. 7; *Reed* v. *Upton*, 10 Pick. 522. Where the acts to be done are concurrent, and the obligations of each party are dependent upon the performance of the other, if either party fail to perform his part of the contract, the property does not pass; the party performing or ready to perform is absolved from his obligation, and the party in fault may, if the contract is complete so far as to be binding, be held liable for the damages resulting from its breach.

The parties must abide by their contract as they have made it. It is competent, however, for either party to waive his rights under a contract, so as not to require a strict performance of the stipulations which it contains for his benefit. The doctrine of waiver is of extensive application, and may always be resorted to with propriety, where the facts will warrant it, to prevent injustice.

It cannot be doubted, but that the contract between the parties, though denominated by the learned counsel in defence inchoate, contained within itself an agreement to do all those things which were necessary to complete the sale. If the contract upon its face contemplated further action of the parties, either joint or several, before it should be complete, it is also apparent that the minds of both parties so far met in it as to manifest a mutual intention or agreement to perform such action. As originally made, what further action did the contract show to have been intended by the parties? For whose benefit was it? Has such action been had, or has it been waived by the party for whose benefit it was intended? Upon the answer to these questions the rights of the parties will be found to depend.

That there is some indefiniteness and obscurity in the contract, arising from the looseness of the terms in which it was made, cannot well be denied. It is certain as to the subject matter and the price to be paid; but the terms of payment, *how* and *when* to be made, and *when* and by *whom* to be fixed, are not so clear. If the contract, however, is not altogether so unintelligible that the intention of the parties cannot be

discovered from it, they must be bound by its legal effect, even though they may have misunderstood or misapprehended its meaning when the contract was made. They must, by the well established rules of law, be conclusively presumed to have understood and intended whatever its legal construction indicates. The difficulty of ascertaining such construction is no reason for making the contract nugatory. Such a consequence is to be avoided, if possible. *Rice* v. *The Dwight Manuf. Co.,* 2 Cush. 80. In this case, such consequence is avoided, because we find the contract is susceptible of a legal interpretation.

It was in the power of the parties, if they pleased, to make a contract for the sale of the plaintiff's interest in the vessel, by which the property should pass upon delivery, without definitely fixing the terms of payment or even the price. These might be left by the express or implied terms of the contract to be determined by third persons, or by themselves; or, in case of disagreement, by a court of law. A contract for the sale of an article, accompanied by an unconditional delivery, no price being named, is of this description. In the case before us, it is plain that the plaintiff agreed to sell, and the defendant to purchase, five-eighths of the brig Typee, and the terms were to be *accommodating.* Under such a contract we think the vessel might pass by delivery.

There being no evidence that the words "terms accommodating" have, by usage, acquired any distinct technical meaning, they must be regarded as having been used by the parties in the sense which is ordinarily ascribed to them in business transactions. "In mercantile language," says Webster's Dictionary, "accommodation is used for a loan of money, which is often of great convenience." The parties, therefore, must have intended that the purchase money, or some part of it, should be permitted to remain in the defendant's hands, as if a loan, for his convenience. The accommodation was not only intended to be reasonable, but for the benefit of the defendant. But when, and by whom, was the extent or the details of this accommodation to be fixed? We may be aided

in determining this question by looking at the other parts of the contract. It is clear by the contract, that so far as the price, or purchase money, should not be paid down, security by other names than that of the defendant was to be given, if required, either *before* or *at the time of the delivery of the vessel.* The nature of the security and the time when the payments should be made, must of necessity be fixed before the security could be given. The parties, therefore, each having an equal voice in the matter, must have originally intended mutually to agree upon the precise terms of accommodation before the vessel was delivered. The parties, then, having failed to agree upon such terms before the delivery of the vessel as was contemplated by the contract, the property in the vessel did not pass, unless the defendant has either waived his right to the accommodation or the agreement in relation to the terms of it, so far as relates to the time when they were to be fixed. If he has waived the benefit of any accommodation, or so far waived the original agreement as to consent that the terms might be agreed upon *after* the delivery, and such terms have been subsequently agreed upon, *even after the loss of the brig*, then he must be held liable upon his contract for the price.

The case shows that the vessel, as early as the 11th of November, was taken into possession by the defendant, and that he, from that time, acting in connection with Capt. Larkin, as master under him, took the exclusive management and control of her. He procured freight for her, and sent her to sea a few days only before her loss. This was done with the assent of Mr. Wheeler, the agent of the plaintiff, who informed the defendant at the time he took possession that " the vessel was to be at his expense and risk from that day." The plaintiff, from that time, ceased to exercise any control over her, and would not have been liable for repairs subsequently made without his direction. *Cutler* v. *Thurlo*, 20 Maine, 213 ; *Tyler* v. *Holmes*, 38 Maine, 238.

These acts of the plaintiff's agent appear to have been either previously authorized or subsequently ratified. As ear-

ly as the 9th of November the plaintiff wrote to him, from Wilmington, informing him of the defendant's offer, and of its acceptance. This letter contains the following language: "You will get all the money you can, and take such security for the balance as for assurance of * * *. See that it is right. He will perhaps pay all. If so, it will suit much better. *Still, do whatever will make sale and close up Typee.*" The authority here given is very broad. It is said, however, that these important acts of the agent must have been done before the reception of the letter. This fact, if it be a fact, does not alter the case. When received, it was a complete ratification of the acts, especially as there was no subsequent attempt to revoke them. These acts of the parties, in transferring and accepting the possession and control of the vessel, amount to an absolute and unconditional delivery under the contract. There seems to be nothing in the case to qualify this delivery. If the delivery had been upon conditions not performed, the property might not have passed. *Hussey & al.* v. *Thornton & al.* 4 Mass. 405; *Smith* v. *Dennie,* 6 Pick. 262. Under the circumstances we think it did pass.

We will next inquire what was the legal effect of such a delivery upon the rights of the parties. The plaintiff, on the one hand, must be regarded as having waived by this delivery his right to a concurrent payment of any part of the money, and to the delivery, at that time, of the security of other names to which by the contract he was entitled before parting with his property. *Smith* v. *Dennie,* before cited. On the other hand, the defendant must have waived, if not his right to the accommodation or his voice in its adjustment, according to the terms of the contract as before stated, at least the *time* within which the terms of its adjustment were to be fixed; and must be regarded as consenting, either that the plaintiff might fix the terms, or that they might be subsequently fixed by the agreement of the parties. It has been often held, where goods have been purchased and delivered under an agreement to be paid for by a note with surety, payable at a future time, if the note is not seasonably furnished,

the seller may have an action of assumpsit immediately for the money. In such a case, it is true, there is a breach of the contract, but it is such a breach as amounts to a waiver of the credit. 2 Kent's Com., 3d Ed., 497.

In the present case, we are clearly of opinion, that the loss of the vessel did not operate as a suspension, withdrawal, or extinction of the defendant's offer relating to the terms of payment, and that the plaintiff, even after a knowledge of the loss, might rightfully accept it.

The parties, in their several offers as to the time of payment, must be understood as intending that the computation, as to time, should be reckoned from the day when the vessel was delivered. The contract of sale became executed from that time, and the parties were left to adjust the terms of accommodation afterward.

In view of all the facts, we have no hesitation in coming to the conclusion, that the defendant, by accepting the vessel and treating her as he did, made himself liable to pay the price agreed; and, as this action was not brought until he had enjoyed all the accommodation he at any time claimed, he has no ground of complaint. As tending to sustain these views, we cite *Carlton & al.* v. *Sumner,* 4 Pick. 516, and *Pearce & al.* v. *Norton,* 10 Maine, 252.

It is also contended that the defendant, by the contract, was entitled to a bill of sale, and that the property in the vessel could not legally pass to the defendant without it. If he was so entitled, he not only waived it for the time, by accepting the vessel without it, but there is much other testimony in the case tending to show that he expressly consented to a delay in its execution and delivery, until after the vessel was lost. In regard to the absolute necessity of such an instrument to pass the property, as between the parties, we have only to say, that the law does not require it. That a bill of sale and its registry, may be necessary for some purposes connected with navigation, is true, but that a vessel, as between the parties, like any other chattel, may pass by delivery so as to vest in the purchaser, is too well settled to require discussion.

*Bixby & al.* v. *The Franklin Insurance Co.*, 8 Pick. 86; *Vinal* v. *Burrill & al.*, 16 Pick. 401; *Richardson* v. *Kimball*, 28 Maine, 463; *Chadbourne* v. *Duncan*, 36 Maine, 89.

In regard to the policies of insurance, they do not seem to have been referred to in the original contract. The subsequent agreement about them, between Mr. Wheeler and the defendant, seems to have been fully performed so far as Mr. Wheeler or the plaintiff was concerned; and if the defendant has suffered loss by reason of any neglect on his part, he alone should bear it.

Something was said in the argument upon the question whether the accommodation provided for in the contract was to be without interest. We see nothing in the case, other than the subsequent statements and conduct of the parties, tending to show that such was their intention. When money is loaned interest is usually expected. But, as the plaintiff does not claim interest, except in accordance with the defendant's proposition, which he accepted, we are not troubled with that question. The judgment will be made up according to the terms of the proposition.

From the view we have taken of the law of this case, it becomes unnecessary to consider the question of amendment. A copy of the writ not having been furnished us, we presume the original counts contained in it, are adapted to the facts as proved, and sufficient to authorize a judgment in this action. According to the agreement of the parties, in the conclusion of the report, the defendant must be defaulted.

*Defendant defaulted.*

TENNEY, C. J., and HATHAWAY, J., concurred in the result.
GOODENOW, J., concurred.
APPLETON, J., dissented.